Case No. 17-5110, Washington Alliance of Technology Workers Appellant v. United States Department of Homeland Security et al. Mr. Miano for the Appellant, Mr. Stewart for the Appellees. It's not on? No, you see how all the others have a black box? I'll do what I need to do. I don't see it. No. Okay. Is it coming out too loud? Is it coming out too loud? Yeah, please. Okay. All right, you may proceed, Counsel. May it please the Court, I'm John Miano. I represent the Washington Alliance of Technology Workers. And with me is Christopher Hayek, who's at the Counsel table. Your Honor, the regulations at issue here are so outside the bounds of congressional authority that quite literally the agency would have to be a second Congress to promulgate them. If you look at their regulations, DHS here claims that alien employment may be authorized either by Congress through statute or through regulation. In other words, their power is equal to Congress's in that area. In addition, their regulations also assert that they have the ability to determine who is present in the United States. We really ought to get to the media issues. You've got questions on the pleading, you've got questions on standing, including injury and redress, and then the reopening doctrine. Why don't you start with standing? Start with standing? Well, here we've pledged several standing theories. The most common, of course, is competitive injury standing. Assuming that is supported by the case law as a starting point, what is the redress when you're talking about it's a third-party type standing case, a Lujan case where you have to rely on the actions of someone else in order to achieve the result that you want. Merely killing the regulation doesn't get you redress. That is not correct, Your Honor. Or at least how we're framing the injury here. I believe that we're correct, that that is a correct statement. I believe that's how DHS reframes our argument. No, no, I'm asking you based on case law, on redress, you're relying on the eventuality, if you can knock out the regulation, that employers would hire your folks as opposed to the people who you don't want in these jobs. Is that right? No, that's not correct, Your Honor. In the case law, the injury is the exposure to competition in the market. That if we succeed, these aliens are removed from the market to competition. The third-party thing has been completely rejected by this circuit repeatedly. We can't reject the third-party concern. It's a Supreme Court concern. It's Article III. Well, we're talking... Wait, hear what I'm saying. The mere fact that there is a possibility, it's like the Lujan case. The mere fact that the agencies may or may not have followed the regulation of the principal agency was a concern, and the court didn't have to deal with it, but they said it's a serious concern. The question here is you have to be able to show that redress will follow. That is that the employers will do, not just that you conceive of this as competition, because another way to look at the case is this isn't competition at all. These folks are merely folks that are hired if the employers are allowed to hire, but it has nothing to do with whether they will hire your people. That's the redress question I'm talking about. Let me go to the case law here, Your Honor. The starting point, the Louisiana Energy v. FERC, where this court said that it is repeatedly held that when an agency allows a competitor into another's market, that that is an injury in fact. Move to the District of Miles-Quibb v. Schleyler case. You're assuming the answer to my question. Let me ask you, in those cases, as I read those cases, it was absolutely clear that they were competitors, meaning there were more people competing for the same thing. The question here is, is that true? What have you shown? What have you offered to show that if you win and the regulation is gone and no permits can be given, your people will get jobs that otherwise would have gone to the intern? Your Honor, there's nothing to that because if you look, for example, Bristol-Miles-Quibb v. Schleyler, this court explicitly rejected our argument. The injury, in fact, is the exposure to competition that the allowance of people into the market. As they said in Bristol-Miles-Quibb v. Schleyler case, that consumers always decide what to purchase in a marketplace. The injury is the exposure to competition by allowing these people into the marketplace. And here they're explicitly in the market. The plaintiffs here, and the identified plaintiffs, are two computer programmers and a network administrator representing the union that represents technology workers. Here we have a regulation that allows, specifically allows, people in those occupations to join the market. And I would point you to the First National Bank v. National Credit Union case, where one competitor was allowed into the market, banking market. Through regulation, they allowed one credit union into the national market, and this court held that that admission was an injury. And the Supreme Court, when it reviewed that, said that there was no doubt that there was an injury, in fact, because competitors were allowed into the market. So this court has repeatedly rejected the argument that the third party, that you have to have someone that there's a specific loss of jobs. And, again, I would refer back to Bristol-Miles-Quibb and the Schleyler case. Okay. Well, you're not really answering my question, but I assume that's your answer. A competitor assumes that you're going after the same thing, and if you're not going after the same thing, you're not competing. We're in the same market. That's the question, but I hear your answer, which is not an answer. That's the question. I would like to give you the answer. If I haven't answered it sufficiently, the answer is that we are not alleging specific jobs are being lost, and we are pointing out that this court has repeatedly stated that that is not necessary to show a competitive injury. No, but the court has always assumed that what we were talking about was the same set of work, same sets of work that both groups were going after, and that's the question here. Is it the same set of work? Yes, it is the same set of work. In other words, if the aliens are coming in, are they really taking jobs that would have otherwise, whether you get them or not, would have otherwise, or is it something entirely different? Your Honor, they are. It's just a training program. Your Honor, they are in the same, exact same occupations. The DHS has a list of fields. They call their STEM field list, which includes computer programmers and system administrators and variants on what are computer programmers, that in the industry there's several job titles, such as software engineer, software developer, all of which are the same thing, and most of these workers that are coming in, foreign workers, are in these computer occupations. Your people are, pardon me, your supposed competitors are coming in at the entry level. That's, we don't know, Your Honor. We don't know that because you're also eligible to get a graduate degree. You can be all that there, and also you're assuming that our people don't want, won't take an entry level job. One of the big problems is, in the industry, is that is older workers getting jobs. Both of our guys are older ones, and in fact, Mr. Smith has recently been pushed out of the, has lost his job, has taken one outside the field and is desperately trying to get a job in the market, and he would clearly take an entry level job to get back into the occupation. Did he lose his job to someone in this program? He did not lose a job. We don't know. He was just laid off. So this is why, when you have formulated the competitive entry document, you never know who's going to buy one product or another. Like in the Bristol-Myers Squibb case, they were allowing a generic drug into the market, and the court noticed there's no way to tell who a pharmacist is going to prescribe one drug or the other, but you could tell if they are in the market and are in competition. What do you think, I mean, it's crucial for your argument to be able to get to the statutory issue, that the agency reopened in the rulemaking, reopened the conversation about the statutory basis for the rule. What are you relying on there? I think here all the public citizen factors are present. First of all, the question of whether an alien can work 42 months as they can on the current regulation is identical to the question of whether it's legal for them to work 29 months, which is legal. No, no, there's a difference. The district court the first time around said you clearly had not shown that the agency intended to reopen a discussion about the legality of the rule. The agency was merely talking about that. That came up and was mooted out. We didn't have to decide that question the first time around. It is now crucial to your argument here as to whether or not in this rulemaking, because otherwise you're out of time, and I'm not talking about the 1992. I understand the district court thought you were out of time. You lose because you couldn't reopen in 1992. I'm not framing it that way. I understand your argument. The question is I looked at the Federal Register. What is it you think that the agency said in the Federal Register to suggest to you that the whole question on statutory authority was open again? One, the agency accepted comments and addressed comments on whether it was lawful to allow aliens to work in the United States at all. That's one that they did. Two, another factor of reopening is the ability to comment. The two previous regulations dealing with this were made without notice and comment. No, no, that's not the question. The reopening doctrine goes to the agency can have a rulemaking on a discrete portion of an existing rule that doesn't allow you to get to the initial inquiry as to whether or not they had authority to regulate in this area. All they've done here is extend the time. That's all. That's their argument. That's all we've done. We didn't reopen the regulation for discussion on a statutory basis. Well, they said one of the factors under public citizen is the ability to have comment. This regulation was the very first time the public had the opportunity to make comment on whether this was legal at all because the two previous times they did it without notice and comment. So that is one of the public questions. On the 1992? The 1992 rule was done without notice and comment as well. This is kind of a problem in the agency. They did that without a comment. So under public citizen, this was the first time the public had an opportunity to comment whether it was legal or not, and that's one of the reopening factors. There was no notice and comment. No notice and comment, Your Honor. Initiating the 1992. None, Your Honor. Questions? Which issue would you like me to specify? Are you specifically determining that because you apparently did not like the track that I was going? Are there specific issues? No, I just had questions that I wanted you to address that are threshold questions. Okay. Yes, those are questions. The other thing that the other side is going to argue, you may want to respond to it, is whether or not the pleading was sufficient and whether or not you would effectively conceded the law. Your Honor, as far as the sufficiency of the pleading, I think the pleadings speak to themselves. That would go on. It goes in the, what were the objections? The objection raised, you know, for example, on the excess of authority. One sentence threw off, which they say, that there was only one, again, only one sentence in here. Well, in the excess of authority, I see that there are pages on pages describing the various statutory provisions, what they do, and then finally it comes down and says after one, two, three, four, five, six, seven, eight, eight pages describes and says that the regulation is in excess of what those statutes do. For claiming excess authority, all you should have to be able to do is say the rule is in excess of authority. No, I mean, take a particularized form. Their argument as a district court period was under the rules. When it was time for you to respond to their motion, you didn't respond. You conceded. And what it says, and our response in the motion was that these things were collectively pleaded, that we stated a fact that these cause of actions were authorized under the statute and that we had pleaded them sufficiently. It was responded to. Whether they don't like the response or not, I can't say, and that's up to you, but the district court said that we didn't say anything when clearly we did say something. The district court said we didn't say anything about the injury for the 1992 rule, and repeatedly we said, point to places where you said stuff about 1992. So I have to say we've hit a very frustrating point here in regard to the procedural issues. I'm not going to go one, two, three, four pages of pleadings on that count. And part of the problem is when we got there in the motion, I mean, a lot of things, I didn't even understand what they were talking about. You know, for example, one of them they said was, we didn't plead that DHS had to publish the STEM list in the Federal Register. You know, it scratched my head, what in the world were they even talking about here? I didn't have any idea why they were doing that until they did their response brief here when they were saying that we were saying that they were required to publish in the Federal Register. In fact, we didn't allege anything like that. We allege that they violated the incorporation by reference provisions, and they could have published it in the Federal Register to get around that, or they could have followed the requirements. Either way, they didn't have to publish it in the Federal Register. So a lot of these things we read, we didn't even know what they were talking about. Okay. I'll give you time and rebuttal. I will forget. Unless you want your last 26 minutes. Well, I was pointing out here, you know, the importance here, that we're basically here taking a shift in immigration policy, taking it out of the hands of Congress, and putting it in the hands of the agency. And the rulemaking here ought to be particularly troubling, that the regulations here were done for the specific purpose of circumventing the quotas on H-1B visas, and the regulations were done in secret, with no one even knowing that these regulations were being considered at the time, and they've been allowed to stand by the courts. Thank you, Your Honor. May it please the Court. I'm Scott Stewart on behalf of the Federal Government. In this case, the District Court dismissed Washtek's complaint on threshold Rule 12 grounds. The Court's dismissal and judgment were correct, and this Court should affirm. I think I'll go, Your Honor, right to what you started with Judge Edwards about the competitor standing issue, regressibility. Let's go to the pleading thing first. Yes, Your Honor. Because I have serious concerns about that, respectfully. I don't know what more they were supposed to do. I don't know how, under a local rule, anyone could say they conceded anything. They pled a statutory claim, and you somewhat disingenuously cite a sentence out of context from the complaint to suggest they haven't said anything. And what they said was, we think the statute is unlawful because it allows folks to come in on permit. The statute says it's not appropriate because they're students. If you look at the complaint all the way down, not the one sentence you cite, they've cited a clear legal claim and cited facts that are undisputed. That is, the folks who come in on permit are graduates, they're not students, and they're making an argument that this facially violates the statute. It's clear. What more are you supposed to say in a complaint? Sure, Your Honor. I respectfully disagree that they adequately plead. And let me just sort of color-wide. I think, at least on appeal, the plaintiffs have added more bone to the media. No, no, I'm looking at the complaint. Sure, Your Honor. So I think the central problem here is that, in addition to Paragraph 63, the Washteck cites kind of a raft of descriptions of the various programs in earlier paragraphs of the complaint. They're all correct that folks who get permits under these programs are graduates. They're not students, and they're saying that's inconsistent with the statute. No one disputes that. The government's not disputing that. That's what's happening in the program. There aren't any more facts to plead. And there's this weird charade that goes on below that they haven't pled facts to support. What more do you have to plead? Just a little bit of color about what it is. Why? They're saying everyone understands these are not students who get the benefit of these permits. We read the statute to say that's impermissible. That's our claim. Now why do they have to say anything more than that? At the pleading stage? Well, Your Honor, I think the district court had trouble understanding. I didn't have any trouble. Well, I think we put this into issue when we moved to dismiss, Your Honor. Here's the problem for me. It's really unfair. It's disingenuous. The complaint is clear. I'm stating a statutory claim. There are other issues in this case. I'm stating a statutory claim. The statute appears to say that it's limited to students. This program clearly goes beyond students. It gives a benefit to folks who are not students. We think that is unlawful. And the fact about what the program is, the facts are uncontested. And everyone knows that. And so we're now in court. Let's get to it. And then you come in with a motion that they've conceded because they don't respond further. Then they reference back to their complaint. What more are they supposed to say? Well, Your Honor, I do think that the district court filings and pleadings here do show a difficulty of notice on the part of the plaintiffs. There's no difficulty of notice. Answer my question. What more are they supposed to show? Just say what it is, why these provisions violate. Your Honor, it's because the statute refers to students. And these are not students who are getting these permits. And that's not contested. That's not the answer to the legal question, but it's sure enough to get you past the motion to dismiss. For failure to state or for failure to lay your claim on? I don't think so in the context here, Your Honor. I don't think that's quite what they say in paragraph 63. They don't mention the word students. They mention completion of a course of study. You can't be serious. Well, Your Honor, I'm not. Is that really on a motion to dismiss on a pleading? Your Honor, respectfully, I don't think that's too much to ask here. And, you know, it's not that we're not asking for a huge burden for WASHTEC to meet. Just, you know, some notice, you know, we gave them an additional opportunity or they had an additional opportunity to shore up anything they wanted to shore up when they opposed the motion to dismiss. Their responses on this and other counts were extremely short. I mean, the response, frankly, on counts 2, 3, and 4 was. The challenge to the policy of allowing aliens to work on student visas after completion of their course of study, that's not clear. Your Honor, I still don't. And it's undisputed that that's exactly what the program does. And then they're saying that's inconsistent with the statute, and they cite the statutory provisions, and then they keep going. Policy of allowing aliens to remain in the United States after completion of their course of study to work or to be unemployed is in excess of DHS's authority to admit. Why don't you just say, well, maybe we're wrong on that and get into your other argument. It's just, it's really kind of offensive, quite frankly. And then to say they conceded the point was kind of the height of chutzpah. They didn't concede anything. Your Honor, it's pretty well. I mean, this Court has been pretty strong in giving the district courts, you know, the discretion to determine whether a concession has been made by a failure to respond. And all we're arguing is that, you know, the district court reasonably exercised that discretion. Don't we review this de novo? Concessions, no, Your Honor. You don't review the complaint of the legitimacy of the complaint de novo, whether or not it can survive a motion to dismiss? I'm not contesting that portion, Your Honor. So if I think they've pled enough, isn't that it? I think you'd still have to consider the district court's exercise of discretion with respect to. . . And you can abuse your discretion. Of course, I mean, discretion can be abused, Your Honor. Right. It can be, but I still. . . And the thing, I mean, there may not be an answer to this question. I still don't know what more you would have expected them to say. Why don't you go on to your next argument? And I read your briefs carefully, and they don't answer the question. Because I don't think you know what more you would expect them to say either. I don't think it would be much more, Your Honor, but I do understand Your Honor's position. I think that we maintain that the district court correctly ruled on this issue on alternative grounds, and we would ask the court to sustain that finding. If I can get to Your Honor's previous point about just redressability, I do think redressability here is a key issue in these previous competitors. This goes after whether the competitor, just the competitor standing issue. We don't. . . Your Honor had raised the question about whether the workers identified in the complaint would accept entry-level jobs, and that's really, as my friend on the other side pointed out or conceded, we don't know whether they would. And then the problem there, it is a failure of pleading on this issue. We don't know what they would accept. The issue with the OPT program is that these are dealing with entry-level folks, people who have between 12 and 36 months of experience, probably on the low end of that, given that they're on the low end of the range, just given when they'd be applying for and taking jobs. Whereas the three folks who WASHTEC has identified and on which they previously submitted affidavits have many more years of experience. You know, Mr. Blatt, for example, has three degrees. He's been applying to jobs, you know, for at least since 2010. Others, you know, another has. . . Randy Sawad has two degrees, has been applying to jobs, you know, for years ago. And I think, again, the problem here on competitor standing is that we just don't know whether these folks are competitors in the relevant markets. What's your best case to support the line of reasoning that you're now pursuing? That is, you have to have an affidavit to show there's a real competitive arrangement here. That is, the plaintiffs and those to whom they're pointing really are in competition. What's your best case? Your Honor, on the affidavit point, I'm not putting too much emphasis on that. I think what I would emphasize as far as kind of best case on this would be just Mendoza and the emphasis on there on being direct and current competitors in the relevant market isn't sort of a generalized increase in competition in the abstract that can confer competitor standing, but it's something where the named members or the identified members, there needs to be some sort of pleading to show that they are really in competition in a plausible way. They have to show that one of them would get a specific job, have an employer say, if I couldn't have hired this alien student, I would have hired this man. I wouldn't go that far, Your Honor. I mean, I think this Court has, as counsel mentioned, exposure to competition. But the thing is that that sort of short quote doesn't capture is the direct and current competitor point. It's sort of like presumably somebody who's one year out of law school is not a competitor of somebody who's 15 years out of law school, for example. Yes, they're in the legal market kind of writ large, but they're not really, unless we know something more, have some kind of plausible reason to believe, they're not really competitors. They're not, you know, increased effort to, or like enabling one to gain, you know, an entry-level job doesn't really mean that the 15-year veteran out of law school is a competitor of that person. What do they have to show? I think we would need some sort of pleadings to indicate, some sort of factual allegations, Your Honor, just to indicate that some member of Wash Tech is competing for entry-level, you know, one-year, two-year out of. So you're saying an affidavit? Well, I mean, not necessarily an affidavit, Your Honor. It could be, you know, some allegations that just bear out that part. But I don't think we really have that much here, especially, and this goes to sort of another point about just sort of a causation problem. What we have here are allegations that kind of predate the new rule, and, you know, they're based on, you know, the complaint was filed very, you know, days after the new rule issued. So we have kind of a stale record, so to speak, limited record, but a record as to whether these folks are actually direct and current competitors, as Mendoza emphasizes is important. But not necessarily. Mendoza's the best you have. I think it's the most on point, Your Honor. I mean, I think, you know, these cases tend to be, you know, as Your Honors know, you know, fact-intensive, and we've cited Arpaio and other folks, you know, not kind of on all fours factually, but just points that emphasize that speculation of redressability is a problem and can stop a standing claim in its tracks. On top of competitor standing, Your Honor, I think on the 1992 OPT rule, Judge Edwards, you had mentioned the reopening issue. The response I give there, and this is my friend emphasized public citizen. Public citizen at page 150 emphasized this court's explanation in American Iron and Steel Institute that when an agency, you know, opens a rulemaking for a particular purpose, you know, a limited focus purpose, a commenter can't just comment on something that's not an issue, goad the agency into a response, and then claim that the issue has been reopened. Yeah, but the problem, don't you have a unique problem here that there was no notice and comment in the first place? I don't think so, Your Honor. I mean, and I think the other point I'd emphasize here is that this court is Is there a case that's dealt with that? There was no notice and comment. The public has never had an opportunity to address the rulemaking. 1992 was on a four cause we're going to just implement. The public wasn't involved. So you've never had notice and comment on statutory authority. So it's not really the typical reopening case. It may not be the typical case, Your Honor, but I think that this court has also said that, you know, when you have a rule that doesn't squarely reopen an issue, but you want to challenge sort of the predecessor rule, the appropriate effort is to petition the agency to do that, ask them to revisit it. If they deny that effort, then That assumes there's no reopening. Correct, Your Honor. But I said that's a mechanism here to But that assumes there's no reopening. We don't have a decision on that. The district court didn't decide that question as to whether there was a reopening, including should we treat it differently because there was never notice and comment in the first place. Right. I believe, Your Honor, the 1992 rule was issued as an interim rule with request for comments. I'm not sure. Mr. Reano hasn't shown that, you know, the issue was or wasn't addressed at that time. It's, you know, hasn't said whether there was and wasn't an opportunity to challenge things then, to raise an authority argument, that sort of an issue. So on reopening, I emphasize that point as well as just that, you know, looking at the rule, the agency was pretty clear here. They continue to refer to the extension, not to the general opt program. They contrasted the extension that they were opt program. They contrasted the extension with the general opt program. If there are no further questions, Your Honor. If you're supposed to come back a little bit to the discussion of the adequacy of the pleadings and the complaint on which the petitioner chose to stand, the plaintiff chose to stand for the most part. If you're right about all that, if the district court is correct about the inadequacy of that, lack of response, if you will, why should this dismissal have been with prejudice? Your Honor, I'm not – I'd have to go recheck on that, but I'm not sure whether the petitioner sought to, you know, file another complaint to, you know, amend his pleadings to – No, I don't think so. Recheck. But I'd have to recheck. I don't know. Let's assume not. I don't think they did. That they didn't want to? They didn't seek to amend the complaint, if that's what you're asking. They were dismissed with prejudice. Yes, Your Honor. And appealed that dismissal. Why should it have been with prejudice? Your Honor, I'd have to go and reconsult the district court record. I haven't thought the issue all the way through. I would say to the extent that the plaintiff has chosen to stand on the cases pleaded and sort of rolled the dice in the court of appeals, I think that it's appropriate to hold the plaintiff to that choice and to just decide based on the complaint that Waszczak chose to rest on. Well, we have the precedents that would lean in the direction of requiring, and in this case, remanding for a dismissal without prejudice. If you're saying, well, the plaintiff hasn't raised that, isn't seeking that, but rather wants to go right to the merits of the dismissal, it's precisely to protect parties from errors by lawyers and from oversights and so on, that the procedural protections of dismissal without prejudice are there. That's why they're there. That's why we have them surrounding Rule 41, surrounding Rule 55. So I'm not sure why we shouldn't. I mean, if our case law is fairly clear that this should have been without prejudice, should we not file that? Your Honor, because Waszczak hasn't pressed it here, hasn't raised it, my instinct is that the court should hold Waszczak to that, and in this instance, this is not the first case in which Waszczak has taken this approach. It's familiar, and yet it still has not sort of argued against the prejudice point so far as I can recall, Your Honor. And I can't commit more firmly than that, but that would be my answer. Well, we're reviewing that de novo, the adequacy of the pleading. It seemed to me the district court was relying not so much on the inadequacy of the pleading but their failure to respond to your motion. I think it was a combination, Your Honor. I mean, I understand that Your Honor raised other points about paragraph 63 and other matters, but I think it was in part just the district court exercising its discretion to manage its docket in an orderly way and make sure the arguments were adequately represented given the stage of the proceedings and then holding the respective sides to the need to adequately address those. But if the district court didn't find an inadequacy of the pleading, and that's all your motion was saying, you weren't asserting any facts that they had to refute. Where does that leave me? The district court can just say, well, they should have responded. Even though there was nothing to say in a response, their failure to respond is justification for dismissal. That doesn't make sense to me. I take your point, Your Honor. I would circle back, and I understand that Your Honor may disagree. We see it differently, yes. But what I would emphasize in response is just, you know, the district court saw the complaint as inadequate. Where did it say that? Because if the district court saw the complaint as inadequate, that's all you have to say as a district court. It's inadequate. The district court was resting on the local rule, but their failure to respond to your motion means that they conceded. I don't know what they conceded. Their failure to respond to your motion means that they conceded the point. I don't know what point that is. It's going around in circles. Is it the point that you think their complaint was inadequate? Is that what they conceded? See, the district court is saying the problem here is they didn't respond to your motion. I looked at what you said. All you said was their complaint is conclusory. And so are they conceding that? Is that what you think the district court meant to say? They conceded that their complaint is conclusory when they responded by saying, we refer back to the complaint? I think that's right, Your Honor, that they conceded their complaint is conclusory. I understand that it seems counterintuitive, but so do a lot of non-responses in the district court on a variety of issues, on dispositive motions. And nonetheless, this Court has enforced the district court. See, but it's not like summary judgment where you're saying something. Your motion wasn't saying anything. Your motion was just saying, well, we're going to file a piece of paper. Hopefully they won't say anything more than the complaint, and then who went under the local rules, when the real issue is whether the complaint is adequate. And you look at the complaint, it's absolutely adequate. And I think that's what we still, we alternatively, in addition to the enforcement of the concession. So do you agree if I think the complaint is absolutely inadequate? Just hear what I'm saying. I think it's adequate. And there isn't anything more as a consequence that they could say. It is adequate in stating the legal proposition, the facts that they think are relevant, and they've done it. And then they respond to you by saying it's already in the complaint. If they've done that, shouldn't they win on this point? Just accepting my assumption, and I think what's in the complaint is good. Now, their failure to say more, that should damn them. If I'm right that the complaint is adequate, should they lose on the local rule? Because they didn't say something more to your motion? Your Honor, I think the problem here is that the response was very, very generic and terse and is kind of a— Mine would be too if I already thought I did what you said I didn't do. There needn't have been any response. Right. They could stand on their pleading. That's essentially what they did. We stand on our pleading. We already said it. Your motion is silly. We already said it. There's nothing more to say. Well, your concern is they didn't say we already said it. Yep. I think they actually did that. I think they referred back to the complaint, if I remember correctly. Well, on this point, Your Honor, I would just refer the point to pages 43 to 44 of their response on counts 2, 3, and 4. They're responding very generically to a lot of counts there, and I think the district court was within its discretion to say, you know, look, that's not an adequate response. I do take Your Honor's point. Okay. That even if the complaint was adequate, the court could say, well, the response is not adequate. Yeah, that's the part that makes no sense. If the complaint is adequate and you're saying, but the response to our motion is not adequate, when your motion is about the adequacy of the complaint. I do take your point, Your Honor, but I would stand by our position that the complaint was inadequate. It's kind of like who's on first base. Is that the one? Thank you, Your Honor. All right. Thank you. Any time left? I'll give you two minutes. A couple points, Your Honor. First of all, we have the assumption that these are entry-level workers, and that's not the case here, that people can go to school. They can get graduate degrees. They're eligible for this. PhD people are eligible for this program. People are eligible for a second time. So there's nothing in here that says that these are all entry-level workers. That's just some assumption they've thrown out without facts. In the case of Mendoza, the people weren't even in the industry. They had been driven out of the industry, and they were trying to get back in, and they were held to be directing current competitors because they wanted to be in the market. I need to correct an error. I was citing plenty of cases that cited the proposition that entry into the market is the injury. The cases are Bristol-Myers Squibb v. Shalala and Honeywell v. EPA. I also point out we have multiple injuries that we've alleged here. We only got to one in our time to speak here. I think that pretty much sums it up. Do you have any other questions for me, Your Honor? Does the Spokio, the Supreme Court's decision in Spokio, add something that's significant here? Where they say particularized injury is not enough. It's got to be concrete. Does that change how we should analyze some of the competitive standing cases? Not at all, Your Honor. You're right. Don't say that so comfortably. Did they say it shouldn't? It's your surmise. Because it could be repeatedly held that allowing competition is a concrete injury, and even the Supreme Court has. I refer back to National Credit Union v. National Bank, where the allowance of a single competitor into the market was without a doubt injury. And that was post-Spokio? Post-Spokio? I'm not sure of the date. I think it was post-Lujan, though. That was a post-Lujan. It definitely was a post-Lujan case. And concrete, and this was already on the formula in Lujan. Well, thank you, Your Honor. All right. The case is submitted. Thank you both.
judges: Henderson, Edwards, Ginsburg